**NOT FOR PUBLICATION**

| | |
|---|---|
| **SPINIELLO COMPANIES,** | **UNITED STATES DISTRICT COURT** |
|  | **DISTRICT OF NEW JERSEY** |
| **Plaintiff,** |  |
|  | Hon. Dennis M. Cavanaugh |
| -vs- | Civil Action No. 07-cv-2689 (DMC) |
| **THE HARTFORD FIRE INSURANCE** |  |
| **COMPANY,** | **MEMORANDUM OPINION** |
| **Defendant.** |  |

This case arises out of defendant The Hartford Fire Insurance Company's denial of a property insurance claim submitted by plaintiff Spiniello Companies in November 2006. Plaintiff is in the pipeline rehabilitation and repair business and allegedly suffered damages resulting from the installation of a liner into an underground pipe in connection with a project in Memphis, Tennessee. The incident leading to the claim occurred on November 21, 2006, and was reported to defendant on November 27, 2006. Defendant conducted an investigation and denied the claim on March 12, 2007. After plaintiff's insurance broker submitted a letter again requesting coverage, defendant reaffirmed its denial on May 12, 2007. On June 8, 2007, plaintiff's complaint for bad faith breach of contract was filed.

Presently before the Court is a dispute over defendant's refusal to produce eleven documents withheld on the basis of privilege. Defendant submitted its position by letter dated June 6, 2008, and plaintiff responded on June 13, 2008. The documents in dispute,

labeled HART000431-HART000467, have been submitted to the Court for *in camera* review.

Defendant argues that these documents consist of emails and correspondence between its in-house counsel, Kevin Majewski, and various Hartford employees and are protected by the attorney-client privilege and work product doctrine.[1] Conversely, plaintiff contends that the documents are relevant and that defendant has failed to establish that the documents are privileged. In addition, plaintiff contends that because it alleges bad faith denial of coverage, the attorney-client privilege does not protect defendant's claim file from disclosure. As a result, it seeks production of all eleven documents. For the reasons that follow, plaintiff's request to compel is **granted in part and denied in part**.

## ANALYSIS

### A.  Legal Standard

When a case is based on federal diversity jurisdiction, courts are to decide issues of privilege based on state law. See In re Ford Motor Corp., 110 F.3d 954, 965-66 (3d Cir.

---

[1] Although defendant lists "work-product" in its privilege log and mentions the doctrine in the opening stanza of its letter to the Court, its papers contain no analysis of the work-product doctrine. Simply raising a privilege in a brief and omitting discussion of its components and application is insufficient to even raise a privilege, let alone establish that it applies. See Torres v. Kuzniasz, 936 F. Supp. 1201, 1212 n.5 (D.N.J. 1996) (noting that "it is not up to the court to address the application of each of the other privileges . . . upon the mere identification of a privilege by the defendants. Accordingly, the court holds that the defendants have not met their burden of proving that any of the listed privileges [apply]."). As such, the Court omits discussion of the doctrine while noting that defendant has not met its burden of showing the doctrine applies to any of the documents in this case.

1997). Thus, the Court considers the attorney-client privilege under New Jersey law.[2]

The attorney-client privilege exists to promote full and frank discussions between attorneys and their clients, see United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App. Div. 1984), and protects confidential communications made in the course of a professional relationship. See N.J.S.A. 2A:84A-20; Rivard v. Am. Home Prod., Inc., 391 N.J. Super. 129, 153 (App. Div. 2007). Unlike the federal privilege, the New Jersey state attorney-client privilege is qualified and may be required to yield when the need for information is legitimate and such information cannot be obtained from any less intrusive source. See In re Kozlov, 79 N.J. 232, 243-44 (1979).

The attorney-client privilege "unquestionably extends to corporations which must act through agents, including their officers and employees." United Jersey Bank, 196 N.J. Super. at 562 (quotation omitted). Indeed, "[s]ince a corporation must act through its agents, communications between an attorney and the corporation's employees, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege." Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J. 1990) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). Although the

---

[2] It is conceivable that the law of other states could apply. See Gilbert Spruance Co. v. Penn. Mfrs. Ass'n Ins., 134 N.J. 96, 102 (1993) (rejecting a strict *lex loci contractus* rule in liability-insurance disputes; instead, applying a significant relationship test weighted in favor of the law of the place of contract); see also NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 319-20 (3d Cir. 1995). However, in the absence of such an argument, the Court applies New Jersey law.

privilege extends to communications made to a corporation's in-house counsel, see United Jersey Bank, 196 N.J. Super. at 563, "[c]ommunications which relate to business rather than legal matters do not fall within the protection of the privilege." Leonen, 135 F.R.D. at 98 (citing Metalsalts Corp. v. Weiss, 76 N.J. Super. 291, 298-99 (Ch. Div. 1962)).

While the rule is simply stated, "legal advice is often intimately intertwined with and difficult to distinguish from business advice." Id. at 99. "Therefore, the court's inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal." Id. (quotation omitted). In conducting this inquiry, the court should be aware of the potential for abuse of the privilege and should require the claimant to "demonstrate that the communication would not have been made but for the client's need for legal advice or services." Id. (quotation omitted); see also United Jersey Bank, 196 N.J. Super. at 563 ("The mere fact that [counsel] is an attorney and served as the bank's in-house counsel is clearly insufficient . . . . Rather, judicial scrutiny must focus upon both the nature of the relationship between counsel and the others and the type of communication involved."). As such, merely "cc'ing" an email to an attorney is clearly insufficient to establish the privilege. See In re Avantel, 343 F.3d 311, 321 (5th Cir. 2003). In other words, "emails in which in-house or outside attorneys are merely sent copies of the text of the email, or in which they are merely one of many addresses, should not be privileged, unless the email is directed to the attorney or sent by the attorney . . . . To rule otherwise would allow parties to evade the privilege limitations by sending copies of every

4

company-generated email to the company's attorney so as to protect the communication from discovery, regardless of whether legal services were sought or who the other recipients of the email were." Id. at 321 n.11 (citation omitted).[3]  Finally, if a communication (such as an email) is privileged but contains attachments, "each attachment must individually satisfy the criteria for establishing the privilege.  Merely attaching something to a privileged document will not, by itself, make the attachment privileged." Leonen, 135 F.R.D. at 98.  Against this standard, the Court will proceed to consider whether defendant has established the privileged nature of the disputed documents, but first must make one preliminary observation.

It is defendant's burden to establish that the documents are protected from disclosure by the attorney-client privilege.  Horon Holding Corp. v. McKenzie, 341 N.J. Super. 117, 125 (App. Div. 2001) ("The person asserting the privilege . . . bears the burden to prove that it applies to any given communication.").  Defendant's letter submission does not acknowledge this burden, and defendant often falls short of meeting it.  Indeed, defendant's position is stated in a few sentences, without detailed explanation, as follows:

> Hartford's adjusters and in-house counsel engaged in e-mail correspondence for the purpose of securing or acting upon legal advice relating to the claim and discussing the need for same.  This email correspondence

---

[3] Although Avantel is a Fifth Circuit Court of Appeals case applying Texas law, not New Jersey law, the case was cited by defendant in its moving papers for the proposition that an email is not discoverable simply because an attorney is not the primary recipient.  This does not address the issue in this case—that is, establishment of the privilege in the first instance.  In all events, Avantel is generally in accord with New Jersey privilege law.  See generally United Jersey Bank, 196 N.J. Super. at 563.

5

> is subject to the attorney-client privilege. Hartford's in-house counsel, Kevin Majewski, also gathered legal opinions and legal research from outside counsel.
>
> . . . .
>
> [T]he attorney-client privilege applies to the email communications because their substance relates to Hartford employees obtaining or requesting legal advice form Mr. Majewski relating to Spiniello's claims.

(Def.'s Letter Br. 3, 6.) These conclusory statements comprise the entirety of defendant's argument. This is so despite the fact that the eleven documents consist of, among other things, approximately forty separate emails, many of which defendant's in-house counsel is neither the author nor recipient. In fact, it appears that Mr. Majewski himself authored no more than two or three of the forty emails. As such, in a number of circumstances defendant has failed to establish that the privilege applies at all.

**B.    Documents**

- *HART000431–HART000436*:  This document is an email referred to on defendant's privilege log as "email regarding faulty workmanship," is dated February 6, 2007, and was authored by Gerald Dwyer, Esq. and sent to Kevin Majewski. The email includes the citation of case law and is sent from outside counsel to Kevin Majewski in his capacity as in-house counsel. Accordingly, this document is protected by the attorney-client privilege.

- *HART000437-HART000438*:  This document consists of an email chain that

6

includes eight separate emails with dates ranging from April 3, 2007 to April 9, 2007. Mr. Majewski is not the author of any of the emails and is only a recipient of three of the eight messages. The five messages that Mr. Majewski did not receive and did not author are not protected by the attorney-client privilege. These messages are the emails dated and sent: (1) April 5, 2007 at 9:44 a.m.; (2) April 5, 2007 at 8:48 a.m.; (3) April 5, 2007 at 8:14 a.m.; (4) April 3, 2007 at 5:06 p.m.; and (5) April 3, 2007 at 8:48 a.m.

The Court also finds that the remaining three emails (April 9, 2007 at 12:07, April 4, 2007 at 9:03 p.m. and April 9, 2007 at 1:15 p.m.) are not protected by the attorney-client privilege. Although Mr. Majewski is listed as receiving a copy of all three emails, he is not the primary recipient of any of the three messages, nor did he author any of the messages. Morever, defendant has failed to establish that the messages relate to legal advice or that the messages would not have been sent but for the need for such advice. Accordingly, they are not protected by the attorney-client privilege. See Leonen, 135 F.R.D. at 98.

- *HART000439–HART000440*: These documents consist of a cover email and letter to Thomas Carlton, Esq. The letter was sent by a paralegal on behalf of Kevin Majewski to Attorney Carlton. The cover email and letter contain generic information regarding Mr. Carlton's retention. Matters such as the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed, are usually not protected by the attorney-client privilege. See Matter of Grand Jury Subpoena Duces Tecum, 165 N.J. Super. 211, 216 (Law Div. 1978) (citing In re Semel,

7

411 F.2d 195, 197 (3d Cir. 1969) ("Among the disclosures courts have ordered attorneys to reveal are the fact of the retainer, the identity of the defendant, *the conditions of employment*, and the amount of the fee." (emphasis added)); see also Stanziale v. Vanguard Info Solutions Corp., No. 06-2208, 2008 WL 1808318, at *1 (Bankr. D.N.J. Apr. 21, 2008). If a document contains more than a general description of the work to be performed, and in fact reveals a client's motive for representation, specific areas of concern, or anticipated areas of research, the document is protected by the privilege. See Stanziale, 2008 WL 1808318, at *1. These documents contain no such information. In fact, they provide nothing more than the information already placed in defendant's moving papers; that is, the fact that defendant's counsel reviewed Spiniello's coverage letter. (See Def.'s Br. 3) ("This letter was received and reviewed by Hartford *and its counsel* and a response was issued . . ."). As such, they are not protected by the attorney-client privilege.

- *HART000441*: This document is a handwritten note authored by Kevin Majewski and marked "attorney-client privilege." Plaintiff offers no reason why such a note should be produced. The Court finds that it is protected from disclosure.

- *HART000442–HART000443*: These documents consist of three emails. One email is sent by *plaintiff's* insurance broker and, therefore, is clearly not privileged. In addition, Mr. Majewski did not send or receive two of the three messages. Finally, the message that Mr. Majewski did receive was not sent to him as the primary recipient and does not seek legal advice. These documents are not protected by the attorney-client privilege.

8

- *HART000444–HART000446*:   These documents consist of eleven separate emails.  Of the eleven emails, eight are the same emails that comprise HART000437-HART000438.  The Court has already determined that these documents are not privileged.  As for the remaining three emails (May 7, 2007 at 2:12 p.m., May 7, 2007 at 2:36 p.m., and May 7, 2007 at 2:47 p.m.), the Court also concludes they are not privileged.  Although the messages generally refer to legal matters, including how defendant interprets its policy, the messages were not addressed directly to Mr. Majewski and do not appear to amount to more than dialogue between two claims adjusters/consultants, Sam Rizzitelli and Steve Kimberlain.  Defendant has failed to establish that the purpose of these emails was to seek legal advice.  Defendant has also failed to establish that the messages would not have been sent but for the need for legal advice.  In short, defendant has failed to carry its burden.  Accordingly, the Court finds that these documents should be produced.

- *HART000447*:   This document consists of three emails.  The first email (May 7, 2007 at 4:02 p.m.) is from *plaintiff's* insurance broker.  As such, it is clearly not privileged.  The remaining two emails are privileged.  The first (May 7, 2007 at 6:46 p.m.) is sent specifically to Mr. Majewski and seeks legal advice.  The second email (May 7, 2007 at 8:43 p.m.) also seeks legal information and advice.  Accordingly, both documents are privileged.

- *HART000448-HART000452*:   These documents consist of an email and an attachment consisting of a copy of defendant's letter reaffirming denial of coverage.  As the attachment was sent to plaintiff directly, it is clearly not privileged.  The cover letter,

9

authored by Boyd Beadles, contains two sentences and is addressed to Sam Rizzitelli. Although Mr. Majewski is "cc'd" on the email, the message was not directed to him and does not seek legal advice. Therefore, again, defendant has failed to establish the privilege applies.

- *HART000453–HART000458*:   These documents consist of a draft of defendant's letter denying coverage and five emails. The coverage letter, which was sent to plaintiff, is not privileged. The emails are also not privileged. None of the emails is authored by Mr. Majewski and none is sent to him for purposes of obtaining legal advice. The dialogue in the letter is nothing more than general business discussion relating to the company's claim handling procedures leading up to the issuance of its second denial letter. These documents must be produced.

- *HART000459–HART000460*:   These documents consist of five emails. None are protected. The email dated June 12, 2007 at 3:48 p.m. could arguably be protected by the work-product doctrine. However, as noted in footnote 1, infra, defendant has failed to sufficiently argue or establish the work-product doctrine applies. Accordingly, this email is not protected.

The remaining four emails are also not protected. One email is sent by *plaintiff's* insurance broker, and the second email is a response to plaintiff's email authored by one of defendant's claims adjusters. Neither is privileged. Likewise, the third and fourth emails (June 8, 2007 at 2:28 p.m. and June 8, 2007 at 2:39 p.m.) are also not privileged. The first

10

of these two emails is not authored by Mr. Majewski nor is it addressed to him at all. The fourth message states, in its entirety, "Gentleman, FYI." For a number of obvious reasons, neither is privileged.

- *HART000461–HART000467*: These documents consist of an email from Mr. Majewski to Tracy Mailloux (with unidentified handwriting on the email) and a six page attachment consisting of the complaint and other publicly available court documents. All of these documents must be produced. Although the email from Mr. Majewski could be protected by the work-product doctrine, defendant has failed to argue or establish the doctrine applies. Therefore, the email cover sheet is not protected. The six page attachment is a publicly available document and is clearly not privileged.

In sum, the Court finds the following documents protected by the attorney-client privilege: (1) HART000431-HART000436; (2) HART000441; and (3) the emails contained in HART000447 sent on May 7, 2007 at 6:46 p.m. and 8:43 p.m.

The Court will now proceed to determine whether the attorney-client privilege should yield in the context of complaint alleging bad faith denial of insurance coverage.

### C.    Piercing the Attorney-Client Privilege

Plaintiff argues that this Court should follow the lead of some states, such as Ohio, which have concluded that in the context of a complaint alleging bad faith denial of an insurance claim, the attorney-client privilege does not protect any claims file materials created prior to the denial of coverage. In response, defendant argues that adopting such a

rule would result in "a sweeping exception [to the attorney-client privilege] that has no basis under the Federal Rules or the law of New Jersey."

Neither party cites controlling New Jersey law on the issue, and both parties seem to agree that no such law exists.[4] When the highest court of a state has not provided a definitive ruling on a specific issue, this Court "must predict how that court would rule if faced with the issue." Covington v. Cont'l General Tire Co., 381 F.3d 216, 218 (3d Cir. 2004) (quotation omitted). In undertaking this task, this Court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue

---

[4] After this dispute was submitted, the New Jersey Appellate Division decided Taddei v. State Farm Indemnity Co., — A.2d —, 2008 WL 2572604 (App. Div. June 30, 2008). In Taddei, the court held, among other things, that the trial court did not err in molding a jury verdict to come within the limits of an uninsured motorist policy. See id. at *1. The court's opinion included dicta as follows: "The severed bad faith claim would then be activated, triggering the right to discovery, motions, and if necessary a separate trial. See Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000-02 (R.I. 1988). In this way, the plaintiff's ability to pursue a potential bad faith claim would be preserved, *but the insurer would not be required to produce its claim file prematurely, '[o]therwise, privileged material may be disclosed which would jeopardize an insurance companies defense.*' Id. at 1001." Taddei, 2008 WL 2572604, at *9 (emphasis added).

This comment, made in the context of the court's discussion about bringing a bad faith claim in the same UM action as an underlying claim, does not control here. The issue before the Taddei court was not the issue in this case; that is, whether there is a *per se* exclusion to the attorney-client privilege in the context of a bad faith claim.

Also, Taddei cites as support for its statement a Rhode Island Supreme Court case, Bartless v. John Hancock, which in turn cites to a Montana federal district court case, In re Bergeson, 112 F.R.D. 692 (D. Mont. 1986). To the extent In re Bergeson can be read to support a *per se* exclusion to the attorney-client privilege in a bad faith case, it is doubtful that it is an accurate representation of the present state of Montana law. See, e.g., Palmer by Diacon v. Farmers Ins. Exchange, 261 Mont. 91, 107-08 (1993).

12

at hand." Id. Undertaking this analysis, this Court finds that the New Jersey Supreme Court would *not* adopt the State of Ohio's exception to the attorney-client privilege in bad faith insurance cases.

**The New Jersey Supreme Court Would Not Adopt the State of Ohio's Exception to the Attorney-Client Privilege in Bad Faith Insurance Cases**

Plaintiff's argument is premised on the Ohio State Supreme Court's 4-3 decision in Boone v. Vanliner Ins. Co., 91 Ohio St. 3d 209 (2001). Boone held that "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims files materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." Id. at 213-14.[5] Plaintiff claims that the Court should apply Boone in this case because such an approach will show how the company reviewed the claim and why it took the action it did.

For the reasons that follow, the Court concludes that the New Jersey Supreme Court would not follow Boone.

First, Boone is the minority rule. Indeed, courts in a number of jurisdictions have considered the issue and declined to adopt a *per se* exclusion to the attorney-client privilege in a bad faith insurance case. See, e.g., Hutchinson v. Farm Family Cas. Co., 273 Conn. 33,

---

[5] The Boone court acknowledged that premature release of "bad faith" information could impede the insurer's defense of the underlying claim. Therefore, the court stated that "if the trial court finds that the release of this information will inhibit the insurer's ability to defend on the underlying claim, it may issue a stay of the bad faith claim and related production of discovery pending the outcome of the underlying claim." 91 Ohio St. 3d at 214.

13

43-44 & n.5 (2005) (Connecticut); State ex rel Brison v. Kaufman, 213 W. Va. 624, 633 (2003) (West Virginia); Hartford Fin. Serv. Group v. Lake County Park & Recreation Bd., 717 N.E.2d 1232, 1235-36 (Ind. App. 1999) (Indiana); Martin v. Am. Bankers Life Ins. Assur. Co. of Fla., 184 F.R.D. 263, 265-66 (D.V.I. 1998) (U.S. Virgin Islands); Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997) (Massachusetts); Dixie Mill Supply Co., Inc. v. Continental Cas. Co., 168 F.R.D. 554, 558 (E.D. La. 1996) (Louisiana); Tackett v. State Farm Fire & Cas. Ins. Co. 653 A.2d 254, 259-60 (Del. 1995) (Delaware); Palmer by Diacon v. Farmers Ins. Exchange, 261 Mont. 91, 108 (1993) (Montana); Aetna Cas. & Sur. Co. v. San Francisco Superior Court, 153 Cal. App. 3d 467, 476-77 (Cal. Ct. App. 1984) (California).  Likewise, at least one commentator has criticized Boone's "chilling effect" on insurance companies' ability to seek legal advice. See Steven Plitt, The Elastic Contours of Attorney-Client Privilege and Waiver in the Context of Insurance Company Bad Faith: There's a Chill in the Air, 34 Seton Hall L. Rev. 513, 572 (2004).

Second, the New Jersey Supreme Court has rejected the notion that waiver of the attorney-client privilege can be automatic based on the cause of action pled; rather, the court endorses a case-by-case approach to waiver issues utilizing the triparte test set forth in In re Kozlov.  See Kinsella v. Kinsella, 150 N.J. 276, 301 (1997).  No In re Kozlov waiver argument was made in this case.

14

## **CONCLUSION**

For all of the above stated reasons, plaintiff's informal motion to compel is **granted in part and denied in part**.  An appropriate Order accompanies this Opinion.

Dated: July 14, 2008

                                                                          s/Mark Falk
                                                                      **MARK FALK**
                                                                       **United States Magistrate Judge**

Orig.: Clerk of the Court
cc:     Hon. Dennis M. Cavanaugh, U.S.D.J.
           All Parties
           File