NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPINIELLO COMPANIES, | Hon. **Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-CV-2689 (DMC) |
| HARTFORD FIRE INSURANCE COMPANY, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross motions by Plaintiff Spiniello Companies ("Spiniello") and Defendant Hartford Fire Insurance Company ("Hartford") for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, the Court finds that Spiniello's motion for partial summary judgment is **granted**, and Hartford's motion for summary judgment is **denied**.

I. **BACKGROUND**[1]

Plaintiff Spiniello is in the pipeline rehabilitation and repair business. Spiniello was engaged during 2006 to re-condition a nine foot underground concrete sewer pipe at the T. E. Maxon Wastewater Treatment Plant in Memphis, Tennessee (the "Memphis Project"). The

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

Memphis Project required Spiniello to create a pipe liner through the use of a "cured in place" process. The "cured in place" process involves mixing chemical catalysts and liquid polymer to form a resin, in which a fabric felt material is soaked. The resin impregnated felt liner is then installed within an existing concrete pipe. Hydrostatic pressure is used to keep the liner in place while the resin cures or hardens. The duration of the curing process is controlled, primarily, by the temperature of the water and the type of catalysts used. The water is heated to accelerate the curing process. Eventually, when the proper temperature is reached, the resin hardens in place and a liner is created. The hardening of the resin is an exothermic reaction.

      In August 2006, Spiniello purchased an "all risk" insurance policy (the "Policy") from Hartford to cover the Memphis Project. The Policy included a faulty materials provision excluding from coverage "loss caused by or resulting from . . . [d]efective, deficient, inadequate or flawed . . . materials." This exclusion was modified, however, by an ensuing loss provision, which stated: "But we will pay for resulting direct physical 'loss' to other Covered Property, except as otherwise excluded or limited."

      On November 21, 2006, Spiniello incurred a loss in connection with the Memphis Project when a defective catalyst it was using to speed up the hardening of the liner caused the resin to harden prematurely, thereby collapsing and ultimately destroying the polyester liner that Spiniello was installing in the pipe. Spiniello allegedly sustained a loss of $827,976. Hartford has denied coverage based on the faulty materials exclusionary provision.

      Spiniello has sued Hartford for breach of contract and bad faith. Currently before the Court are cross-motions for summary judgment. Spiniello argues that the loss due to the

collapse, removal and replacement of the liner is covered under the ensuing loss provision as resulting damage to "other Covered Property." Hartford argues that Spiniello's claim is precluded under the faulty materials exclusion because it is a loss "caused by" the defective catalyst.[2] Hartford also moves for summary judgment on Spiniello's bad faith claim, arguing that it had a "debatably valid" reason for denying the coverage claim.

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. See id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all

---

[2]Hartford apparently cited three additional Policy provisions in its initial claim denial letter.  Because Hartford does not raise the other provisions on summary judgment, however, the Court will not consider them.

doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III.  DISCUSSION

A.  *Breach of Contract*

Summary judgment for Spiniello is appropriate on the breach of contract claim because no issues of material fact exist and because the loss incurred for the collapse, removal and replacement of the liner is covered by the ensuing loss provision. Whether an insurance policy provides coverage to an insured is a question of law to be decided by the Court.[3] Atlantic Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n, 364 N.J. Super. 599, 604 (App. Div. 2003). Courts interpreting the contract should adopt "[t]he most fair and reasonable construction, imputing the least hardship on either of the contracting parties." Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 672 (3d Cir. 1986). Nonetheless, "courts are bound to protect the insured to the full extent that any fair interpretation will allow." Id. (quoting Mazzilli v. Accident & Cas. Ins. Co. of Wintherthur, 35 N.J. 1, 7 (1961). Policies should be construed "consistent with the insured's reasonable expectations," and ambiguities must be resolved "in favor of the insured." GTE Corp. v. Allendale Mut. Ins. Co., 372 F.3d 598, 608–09 (3d Cir. 2004). Accordingly, "[i]f the controlling language will support two meanings, one favorable to the insurer, and the other

---

[3] Both parties assert, and the Court agrees, that New Jersey law applies.

4

favorable to the insured, the interpretation sustaining coverage must be applied." Cooper Labs., 802 F.2d at 672 (quoting Mazzilli, 35 N.J. at 7).

      The dispute in this case centers on whether the Policy provides coverage for the collapse, removal and replacement of the pipe liner. The facts appear settled, as both parties agree that the damage sequence began with the defective catalyst and ended with the collapsed liner. The parties disagree, however, over the meaning and interaction of the faulty materials and ensuing loss provisions. The faulty materials exclusion states that Hartford will not pay for "loss caused by or resulting from . . . [d]efective . . . materials." On its face, this provision appears to preclude recovery for losses caused by the use of defective materials, though it leaves open the question of attenuation and where the causal chain terminates. Importantly, however, the faulty materials clause is modified by the ensuing loss provision, which states that Hartford will pay for "resulting direct physical loss to other Covered Property." This modifying provision appears to conflict with the faulty materials clause because it provides coverage for losses to "other Covered Property," even where that loss results from the use of defective materials.

      The Court agrees with Spiniello that the loss incurred due to the collapse, removal and replacement of the liner is covered by the ensuing loss provision. The defective catalyst was an external agent used to accelerate the hardening of the resin, and ultimately the liner, in place. The defect in the catalyst caused the resin to harden prematurely, resulting in the liner's eventual collapse and necessitating its removal and replacement. Construing the Policy language according to an "insured's reasonable expectations," see GTE Corp., 372 F.3d at 609, the Court finds that the liner is "other Covered Property" within the meaning of the Policy, and that the

damage thereto was "resulting direct physical loss" from the resin's premature exotherm.

The Court is not persuaded by Defendant's argument that the ensuing loss provision applies only where a separate, independent covered event causes the damage. Nothing in the language suggests that an intervening event is required before coverage is triggered. Indeed, the terms of the provision require only that there be a "resulting direct physical loss to other Covered Property." Read according to the "reasonable expectations" of an insured, this language indicates simply that damage inflicted on property "other" than the defective property itself will be covered, whether or not some intervening event intercedes.[4]

Furthermore, had Hartford intended to require an intervening occurrence or event, it should have affirmatively stated so in the Policy language. See, e.g., Mazzilli, 35 N.J. at 7 ("[I]n evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question."). In Section B.1.F(4) of the Policy, for example, the ensuing loss provision explicitly states that the clause applies only to loss "caused by resulting fire or explosion." In that section, the language definitively requires an intervening fire or explosion as a precursor to applying the ensuing loss exception. Here, the ensuing loss provision includes no such language. Accordingly, the Court finds it unlikely that an intervening event was contemplated by the parties, and that, in any event, reading such a requirement into the clause would be inconsistent

---

[4] In fact, Hartford's suggestion that an intervening event such as a fire would suffice to trigger the ensuing provision clause only supports Spiniello's position. (See Def.'s Opp. 10–11.) Hartford's use of this example essentially admits that the liner is "other Covered Property," such that, had an intervening cause been required and actually occurred, Hartford would agree that the ensuing loss provision applies.

with "the insured's reasonable expectations."

Nor has the Third Circuit held that an ensuing loss provision requires a separate intervening cause. Defendant points to the Third Circuit's decision in <u>GTE Corp.</u> for the principle that the ensuing loss clause applies only where a "separate" covered peril or damage occurs. But the Third Circuit in that case expressly declined to decide whether the ensuing loss need be the result of an "intervening cause" or "beyond that normally expected." <u>See</u> <u>GTE Corp.</u>, 372 F.3d at 614 n.18. Rather, the Court found simply that ensuing loss provisions are "best read as permitting recovery where a covered peril or damage results from [the excluded event]." <u>Id.</u> at 614. In <u>GTE Corp.</u>, the Third Circuit refused to apply the ensuing loss clause to provide coverage because the insured failed to establish physical damage that was "separate from the defective property itself." <u>Id.</u> That decision does not prevent recovery in this case, however, because Spiniello has alleged physical damage to the liner, which the Court finds to be "separate from the defective property itself."

The Court is mindful that the ensuing loss provision "cannot be construed so broadly that the rule (the exclusion) is swallowed by the exception." <u>Id.</u> at 614. Nonetheless, the Court finds that "the most fair and reasonable construction" of the ensuing loss provision is that it provides coverage for the collapse, removal and replacement of the liner. Alternatively, the best argument that can be made for Hartford's position is that the Policy is ambiguous, in that the faulty materials exclusion appears to say one thing, while the ensuing loss clause appears to say another. Ambiguities, however, are resolved "in favor of the insured." <u>Id.</u> at 609. Furthermore, courts are instructed that "if the controlling language will support two meanings, one favorable to

7

the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied." See Cooper Labs., 802 F.2d at 672. Thus, even if the Court found that the conflicting clauses make the Policy ambiguous, which it does not, the Court would still be required to adopt the "interpretation sustaining coverage" and rule in favor of Spiniello because it remains that the "most fair and reasonable construction" of the ensuing loss clause is that it provides coverage for the loss on the liner. Accordingly, Spiniello's motion for partial summary judgment on the breach of contract claim is granted, and Hartford's motion for summary judgment is denied.

      B.    *Bad Faith*

Hartford also seeks summary judgment on Spiniello's bad faith claim, arguing that it had valid reasons for denying Spiniello's claim. Insurers owe a duty of good faith to the insured in processing first-party claims. See Pickett v. Lloyds, 131 N.J. 457, 467 (1993). "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Id. (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313 (R.I. 1980)). Where a claim is "fairly debatable," however, the insurer will not be liable. Id. at 453.

Here, summary judgment is premature because it appears that genuine issues of material fact exist with respect to Hartford's reasons for denying the coverage claim, including its alleged reduction of the claim loss reserve. Accordingly, Hartford's request for summary judgment on the bad faith claim is denied.

## IV.     CONCLUSION

For the reasons stated, it is the finding of this Court that Spiniello's motion for partial summary judgment is **granted**, and Hartford Insurance's motion for summary judgment is **denied**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       November 21, 2008
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File